# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAVID GILMORE,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF PATERSON,<br><br>Defendant. | **Civil Action No. 20 -09316 (SRC)**<br><br>**OPINION & ORDER** |

**CHESLER**, District Judge

This matter comes before the Court on the motion for partial summary judgment filed by plaintiff David Gilmore ("Plaintiff" or "Gilmore") and the cross-motion for partial summary judgment filed by defendant, the City of Paterson ("Defendant" or "the City"), pursuant to Federal Rule of Civil Procedure 56. The Court has reviewed the papers submitted and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, both Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment will be denied.

## I

This dispute stems from Gilmore's termination by the City of Paterson in late 2021. Gilmore was the City's Director of Community Improvements from March 2016 until his termination as well as a former political opponent and outspoken critic of Mayor Andre Sayegh. The crux of the City's argument for his termination was based on a complaint filed by Sandra Pavon, an employee in the City's Uniform Construction Code ("UCC") office. That office, under

the supervision of Jerry Lobozzo, fell within Gilmore's purview as Director of Community Improvements. Pavon filed an employee complaint form claiming that Gilmore harassed her and created a hostile work environment. She attached pictures of Gilmore as evidence purporting to show Gilmore engaged in various acts of harassment such as staring at Pavon and berating her. Pavon also alleged that Gilmore interfered with her interactions with clients and took various other actions that muddied the reporting structure within and between the Office of Community Improvement and the UCC office. An outside law firm, the Bridges Law Group, was retained to investigate Gilmore's conduct and reported its findings on October 18, 2021.

Based in part on the findings of the Bridges investigation, Gilmore was served with a Preliminary Notice of Disciplinary Action on December 15, 2021, followed by an Amended Preliminary Notice of Disciplinary Action on December 29, charging him with Unprofessional Conduct and Harassment under the City of Paterson's Personnel Policies, Insubordination, Conduct Unbecoming a Public Employee, and "Other Sufficient Causes." Gilmore was suspended without pay on December 17, 2021. Gilmore alleges that, because he was a "notable community activist and political candidate, it was known by Defendant that these baseless charges would be published by numerous media outlets." Plaintiff's Statement of Undisputed Material Facts at ¶ 36.[1] A departmental hearing held on January 28, 2022 preceded the issuance of a Final Notice of Disciplinary Action on April 19, 2022. That Action removed Gilmore from his position within the city government.

Gilmore appealed to the state Civil Service Commission. The matter was transferred to the Office of Administrative Law on April 25, 2022, and Administrative Law Judge Gail Cookson was assigned to the matter on April 30, 2022. ALJ Cookson held plenary hearings on October 19

---

[1] The City disputes this allegation as unsupported. See Defendant's Statement of Undisputed Material Facts at ¶ 36.

and 20 and November 28 and 29, 2022. The parties filed written summations, and ALJ Cookson closed the matter on January 26, 2023. Her initial decision, issued on March 27, 2023, held that the City had not met its evidentiary to prove any violations of the relevant workplace misconduct statutes. After a thorough review of the evidence presented to the hearing officer, she characterized the actions against Gilmore as "a vendetta" and "trumped-up disciplinary charges." ALJ Decision at 27-28. ALJ Cookson ordered that the charges against Gilmore be rejected, reversed Gilmore's removal, ordered back pay, benefits, and seniority, and awarded Gilmore attorney's fees.

Plaintiff filed his original complaint in this Court on July 23, 2020, invoking our jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). He amended his complaint twice—first on December 15, 2021, and then again on December 14, 2022. Gilmore's Second Amended Complaint lists three causes of action: (1) violation of 42 U.S.C. § 1983 and Article I of the New Jersey Constitution, (2) violation of the Conscientious Employee Protection Act, and (3) common law defamation. ALJ Cookson's decision was released on March 27, 2023, amidst the discovery period in this litigation.

Plaintiff filed the instant motion for partial summary judgment, addressing only the defamation claim, on July 20, 2023. The City opposed the motion and made its own cross-motion for partial summary judgment, also addressing only the defamation claim, on August 22, 2023.

## II

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). A factual dispute is genuine if a reasonable

jury could return a verdict for the non-movant and material if, under the substantive law, the dispute would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court may not make credibility determinations or engage in any weighing of the evidence. Anderson, 477 U.S. at 255; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

Once the moving party has satisfied its initial burden, the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985). To create a genuine issue of material fact, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial. Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 571 U.S. 177 (2014). The party opposing a motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

### III

Plaintiff argues that he is entitled to summary judgment because the City is collaterally estopped from relitigating the issue of whether the City defamed Gilmore.

**A**

Collateral estoppel, or issue preclusion, requires that "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." Peloro v. United States, 488 F3d 163, 175 (3d Cir. 2007) (quoting Burlington Northern R. Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir. 1995); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979). "When a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact before it which the parties have had an adequate opportunity to litigate,' . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986) (quoting Utah Const. & Mining Co., 384 U.S. 394, 422 (1966)). A New Jersey state court would give issue-preclusive effect to the judgment of a state administrative agency under roughly the same circumstances as the federal test. See Hennessy v. Winslow Twp., 183 N.J. 593, 599 (2005) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)); see also Mansoldo v. State, 187 N.J. 50, 60 (2006) (holding that "collateral estoppel applies to the final decisions of administrative agencies").

Plaintiff seeks to collaterally estop the City from litigating the issue of defamation. We analyze defamation as would the New Jersey Supreme Court. Gares v. Willingboro Twp., 90 F.3d 720, 725 (3d Cir. 1996). In New Jersey, "a statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164-65 (1999) (citing Restatement (Second) of Torts §§ 558, 559 (4th ed. 1977)). To succeed on a defamation claim, a plaintiff must prove that (1) the statement was false, (2) the defendant

communicated the false statement to another person, and (3) that the defendant acted negligently or with actual malice in communicating the statement. G.D. v. Kenny, 205 N.J. 275, 293 (2011).

Both parties agree that Plaintiff is a public figure, so he must prove that the City acted with actual malice when issuing the charges against him. Senna v. Florimont, 196 N.J. 469, 496 (2008) (citing N.Y. Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)). Proving actual malice requires that the defamatory statement be made with knowledge that the statement was false or "in reckless disregard of its truth or falsity." Id. at 486 (quoting Dairy Stores, Inc. v. Sentinel Pub. Co., Inc., 104 N.J. 125, 151 (1986)). New Jersey courts are generally wary of resolving actual malice cases on summary judgment because "the issue of a defendant's state of mind 'does not readily lend itself to summary disposition[.]'" Costello v. Ocean Cnty. Observer, 136 N.J. 594, 615 (1994) (quoting Maressa v. New Jersey Monthly, 89 N.J. 176, 197 n.10 (1982)).

**B**

Gilmore's preclusion argument stumbles at the starting block. He seeks to have the ALJ decision be accorded preclusive effect, but nowhere in Plaintiff's papers does he even attempt to demonstrate that the ALJ was required to rule on actual malice—a required element of his defamation claim. And in fact, ALJ Cookson made no findings whatsoever on actual malice. She neither had to "determine that the defendant in fact entertained serious doubts about the truth of the statement" nor did she need to "analyz[e] the thought process of [a] particular defendant[.]" Costello, 136 N.J. at 615-16; Durando v. Nutley Sun, 209 N.J. 235, 251 (2012). The issue of actual malice was therefore not involved at all in the prior action, it was not actually litigated, it was not determined by a valid and final judgment, and it was not essential to the judgment. To be sure, Plaintiff is correct that ALJ Cookson's decision might have preclusive effect with respect to the issues that were actually litigated in that proceeding: the ALJ acted "in a judicial capacity" and

"resolved disputed issues of fact" which "the parties had an adequate opportunity to litigate."

Elliott, 478 U.S. at 799. But the ALJ reviewed whether the State had met its burden of proof in the

adjudication of an employment termination under several state civil service statutes; the

proceedings before her did not constitute a defamation case. She made legal conclusions regarding

harassment and hostile work environment charges and found that, in the proceeding below, the

City did not prove by a preponderance of the evidence that Gilmore had violated those statutes.

See ALJ Decision at pp. 25-29. These rulings certainly resolve *some* issues—namely, whether the

City met its burden of proof with respect to the bases for Gilmore's termination—but they do not

mean that Plaintiff was defamed. More to the point, ALJ Cookson's decision has no bearing on

whether on whether the City had the requisite mental state for actual malice.

Because the ALJ made no determination whatsoever on actual malice, the City is not

collaterally estopped from litigating that issue in this suit. Plaintiff's entire argument for summary

judgment relies on ALJ Cookson having already ruled that the City defamed Plaintiff, but ALJ

Cookson was not required to rule on actual malice. And without a ruling on actual malice, there

could be no ruling on Plaintiff's defamation claim. Therefore, his summary judgment motion fails.

**IV**

In support of its cross-motion for summary judgment, the City argues that Plaintiff cannot

show that the City acted with actual malice when it initiated termination proceedings against

Plaintiff. [2]

---

[2] The City also argues that that Plaintiff was not "actually harmed" by the City's actions. This argument is inapposite. Plaintiff need not demonstrate actual damages; both parties agree that Gilmore is a public figure and that the actual malice standard applies to his defamation claim. New Jersey defamation law does not require plaintiffs to demonstrate actual damages in actual malice cases. See Rocci v. Ecole Secondaire Macdonald-Cartier, 165 N.J. 149, 156 (2000) (quoting N.Y. Times v. Sullivan, 376 U.S. 254, 279-80 (1964)). But even if this were not the case, a factfinder could readily conclude that Plaintiff suffered actual damages. Actual damages are not limited to pecuniary loss. Id. at 239. Rather, the concept includes "'impairment to reputation and standing in

As discussed above, <u>supra</u> at III(A), plaintiffs in a defamation case involving public officials or matters of public concern must prove actual malice. <u>Senna</u>, 196 N.J. at 496 (quoting <u>N.Y. Times</u>, 376 U.S. at 279-80). Actual malice, in turn, requires that the statement either be made with knowledge that the statement was false or in reckless disregard of its truth or falsity. <u>Id.</u> at 486 (quoting <u>Dairy Stores</u>, 104 N.J. at 151). Plaintiffs asserting defamation claims in the public concern/public figure context "cannot rely on the doctrine of presumed damages absent a finding that the defendant published the statement with [actual malice]." <u>Rocci v. Ecole Secondaire Macdonald-Cartier</u>, 165 N.J. 149, 156 (2000) (quoting <u>N.Y. Times</u>, 376 U.S. at 279-80). If a jury concludes that the City acted with actual malice in issuing the charges against Plaintiff, Plaintiff need not prove any damages at all to have a viable defamation claim against the city. In order to defeat a summary judgment motion, an actual malice plaintiff must demonstrate that "a reasonable jury could conclude that 'clear and convincing evidence' exists that the defendants [acted] with actual malice." <u>Costello</u>, 136 N.J. at 614 (quoting <u>Anderson</u>, 477 U.S. at 254-55).

There is more than enough evidence in this record for a factfinder to conclude by clear and convincing evidence that the City acted with actual malice in issuing the charges against Gilmore. Myriad facts in the record support this conclusion: the "cover" of the donut incident, the thinness

---

the community,' along with personal humiliation, mental anguish, and suffering to the extent that they flow from the reputational injury." <u>Id.</u> (quoting <u>Gertz v. Robert Welch, Inc.</u>, 418 U.S. 323, 350 (1974)). On the record before this Court, the City cannot demonstrate that Plaintiff suffered no actual damages. Plaintiff, a city organizer and local politician, has presented credible evidence that at least one media outlet reported on the charges against him. <u>See</u> Ex. Q to Plaintiff's Motion for Partial Summary Judgment. The City characterizes the connection between the publication of these news articles and any reputational harm suffered by Plaintiff as "vague and amorphous." Defendant's Cross-Motion for Partial Summary Judgment at 11. But it is precisely the "vague and amorphous" nature of the harm to Plaintiff's reputation that precludes summary judgment. The burden at summary judgment is on the moving party to prove that there are no outstanding questions of material fact. <u>Anderson</u>, 477 U.S. at 256. The City cannot meet this burden by merely asserting that it is unclear how, precisely, Plaintiff's reputation is harmed. They must point to concrete evidence that Plaintiff's reputation was *not* harmed, and they have not done so.

of Pavon's allegations against Plaintiff, the biased witnesses at the administrative hearing, and the Bridges investigator's statement to Pavon ("I look forward to working with you"), just to name a few, raise outstanding questions about the City's state of mind with respect to the truth of the charges against Gilmore. A reasonable jury could conclude by clear and convincing evidence that the City brought the charges with actual malice. While ALJ Cookson was not required to make a conclusive determination on the truth or falsity of these allegations—she merely held that the City had not proven them by a preponderance of the evidence—her findings that many of the witnesses and much of the evidence lacked credibility militates strongly against finding that there are no facts in the record upon which a factfinder could determine the City acted with actual malice.

As discussed above, New Jersey courts are particularly wary of resolving actual malice cases at summary judgment. Costello, 136 N.J. at 615. That is because a defendant's state of mind is difficult to ascertain via summary adjudication; the court's factfinding function is much better suited to assessing credibility of witnesses and making a state of mind determination. See, e.g., Sartor v. Arkansas Gas Corp., 321 U.S. 620, 628 (1944) (emphasizing that resolving a case on summary judgment robs the factfinder of the ability to assess "trustworthiness of testimony" by cross examination); 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil § 2726 (4th ed. 2022) ("Doubts as to the credibility of the movant's affiants or witnesses may lead the court to conclude that a genuine issue of material fact exists."). This case demonstrates exactly why. An ALJ made adverse credibility determinations regarding the City's witnesses and evidence after an extensive hearing and searching inquiry, yet the City seeks disposition of this claim via summary adjudication. The history of this case and the nature of the allegedly defamatory statements make exceptionally clear that a factfinder must have the opportunity to assess the

evidence regarding the City's state of mind, and the City's evidence does not meet the high bar required to evince the opposite conclusion.

The City has not met its burden to demonstrate that no outstanding questions of material fact exist with respect to actual malice. Thus, summary judgment in the City's favor is inappropriate.

*     *     *

For these reasons,

**IT IS** on this 26th day of September, 2023

**ORDERED** that Plaintiff's motion for partial summary judgment (Docket Entry No. 60) is **DENIED**; and it is further

**ORDERED** that Defendant's cross-motion for partial summary judgment (Docket Entry No. 62) is **DENIED.**

  s/Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.